UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID CORBETT,<br><br>  Plaintiff,<br><br>  v.<br><br>BISON BOYS, LLC, an Idaho limited liability company; TYLER PORTER, an individual,<br><br>  Defendants. | Case No. 4:20-cv-00353-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

### INTRODUCTION

Before the Court is Defendants Bison Boys, LLC and Tyler Porter's Motion to Dismiss for lack of standing and for failure to state a claim (Dkt. 3). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on

the record before this Court without oral argument. For the reasons that follow, the Court will grant Defendants' motion.

## BACKGROUND

On April 8, 2019, Bison Boys, LLC entered into a Letter of Engagement with Plaintiff, David Corbett, a producer located in Los Angeles, California, to produce a reality television series depicting the Bison Boys and their experiences running a bison ranch in Eastern Idaho. *Compl.* ¶ 1-2, 9-11 and *Ex. 1* at 12-16, Dkt. 1. The agreement provided that Bison Boys would pay Corbett $30,000 over the course of three months in exchange for his efforts to develop the show, including the creation of a "series bible," an "industry standard pitch deck," and any other necessary marketing materials. *Compl. Ex. 1* at 12-13, Dkt. 1. The agreement further contemplated that in consideration for Corbett's good faith efforts to shop the reality show to potential networks, financiers, and/or talent, Corbett would have a one-year "exclusive right to represent all television, motion picture rights and ancillary and allied rights in and to" the reality series. *Compl. Ex. 1* at 14, Dkt. 1.

Under the agreement, Corbett would receive additional compensation related to the actual production of the reality show, in the event that Bison Boys and a third party came to an agreement. *See id. Ex. 1* at 15 ("Producer shall in consultation with Owner, negotiate directly on Owners behalf with all Third

Parties the terms and conditions applicable to Producer's and Owners individual and collective services, rights (including, without limitation, *Producers services, respective companies' services, compensation and credits* on the potential Project) and the terms and conditions for the acquisition of rights in and to the Property by such Third Party(ies)" (emphasis added)). Bison Boys and Corbett also agreed the contract would not be breached by Bison Boys failing to execute a third-party agreement to produce the show, as long as the parties acted in good faith. *Id.*

Bison Boys paid Corbett $30,000 over the next three months, as provided under the contract. *Compl.* ¶ 26. In return, Corbett provided a series bible and branding report to Bison Boys, and met with several television executives and producers about the series. *Id.* ¶ 16-19. However, the relationship between Bison Boys and Corbett went south, and Bison Boys sent Corbett a "Notice of Termination for Breach" on January 30, 2020. *Id.* at ¶ 25. The letter alleged that Corbett had failed to make good faith efforts to shop the reality series around and had failed to write the series bible. *Id.*

Corbett is now suing Bison Boys, LLC alleging breach of contract, breach of duty of good faith and fair dealing, promissory estoppel, and unjust enrichment. *Id.* at ¶ 29-49. Corbett is also suing Tyler Porter as an individual, alleging tortious

interference with contract. *Id.* at ¶ 50-55. Bison Boys and Porter have moved to dismiss the complaint under the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Corbett lacks standing with respect to either of the defendants, and has failed to state a claim against Porter. *Def. Br.* at 1, Dkt. 3-1.

## LEGAL STANDARD

### A. Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may bring a motion to dismiss for lack of subject matter jurisdiction. In a motion challenging subject matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of showing there is jurisdiction to survive defendant's motion to dismiss. *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001). Where a FRCP 12(b) motion to dismiss is based on lack of standing, the reviewing court must defer to the plaintiff's factual allegations, and further must "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### B. Governing Law

Corbett alleges that this Court has diversity jurisdiction over this case. *Compl.* ¶ 8, Dkt. 1. As such, Idaho substantive law governs. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.").

"When interpreting state law, federal courts are bound by decisions of the state's highest court." *Lewis v. Tel. Emps. Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996).

## ANALYSIS

Standing is a jurisdictional matter, and thus a motion to dismiss for lack of standing is properly raised in a Rule 12(b)(1) motion to dismiss. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010). To establish standing under Article III, the plaintiff must prove: (1) an injury-in-fact that is concrete and particularized, and actual or imminent; (2) a fairly traceable causal connection between the injury alleged and the conduct in dispute; and (3) a sufficient likelihood that the relief sought will redress the injury. *Lujan*, 504 U.S. at 560–61. "Plaintiffs cannot rely on speculation about 'the unfettered choices made by independent actors not before the court[]'" in demonstrating injury-in-fact. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415 n.5 (2013) (internal quotation marks and citation omitted).

Idaho law also requires that proof of injury not be too speculative. *See Lockwood Graders of Idaho, Inc. v. Neibaur*, 80 Idaho 123, 128-29 (1958) (reversing a judgement and remanded for a new trial because "damages were remote and speculative"). Compensatory damages for lost profits and future earnings must be reasonably certain. *Inland Grp. Of Companies, Inc. v. Providence*

*Wash. Ins. Co.*, 133 Idaho 249, 257 (1999). "Reasonable certainty requires neither absolute assurance nor mathematical exactitude; rather, the evidence need only be sufficient to remove the existence of damages from the realm of speculation." *Griffith v. Clear Lakes Trout Co.*, 143 Idaho 733, 740 (2007). Damages are unduly speculative "when the probability that a circumstance will exist as an element for compensation becomes conjectural." *Neibaur*, 80 Idaho at 128.

Defendants argue that Corbett's alleged injury is too speculative and that he accordingly does not have standing in this case. This argument is well taken. While Corbett alleges various claims for relief, including breach of the implied covenant of good faith and fair dealing, promissory estoppel, and unjust enrichment, the only possible injury raised by the Complaint is the lack of opportunity to negotiate a third-party contract to produce the show and the resulting lack of commission.[1] To the extent Corbett alleges that Bison Boys appropriated his work product, Corbett fails to allege any injury. *See Compl.* ¶ 36, Dkt. 1. The agreement provided that

---

[1] A claim for reliance damages resulting from the promissory estoppel claim may have supported injury-in-fact, had Corbett pled any facts to support reliance damages. *See Vestar Development II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 962 (9th Cir. 2001) ("On these facts, [Plaintiff] could satisfy [the reasonable certainty] standard only with respect to reliance damages: time spent, expenses incurred, opportunities foregone, or perhaps harm to his reputation."). But Corbett has not stated any underlying facts that might support a claim of reliance damages, beyond his bare assertion that he is entitled to them. *Compl.* ¶ 39-44, Dkt. 1; *see generally id.* This is insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Bison Boys would pay Corbett $30,000 as consideration for his efforts to develop the series, including the production of the series bible and other development-related work product.[2] This sum was paid to Corbett by Bison Boys as contemplated.

With regard to Corbett's loss of opportunity to negotiate a third-party producer contract, Defendants point out that there are three levels of speculation that Corbett would have to overcome in order to sufficiently allege injury. First, Corbett would have to show that he would have been able to successfully find a third party interested in the show and willing to produce it. *Def. Br.* at 4-6, Dkt. 3-1. Second, Corbett would have to show that the resulting deal was sufficient, such that Bison Boys would accept it in good faith. *Id.* And third, Corbett would have to demonstrate with reasonable certainty what his commission would have been on the hypothetical third-party contract. *Id.*

The speculation required prevents Corbett from being able to show any reasonably certain injury, as required under Idaho law. *Vestar Development II,*

---

[2] Paragraph 6 of the Letter of Engagement also provides that "Material shall be the sole and exclusive property of the Owner from the moment of creation." *Compl., Ex. 1,* Dkt. 1 at 13. To the extent that Corbett bases his unjust enrichment claim on work product created as contemplated in Paragraph 2 of the Letter of Engagement, this claim is satisfied by Defendants' payment of $30,000 as contemplated by the Letter of Engagement.

**MEMORANDUM DECISION AND ORDER - 7**

*LLC v. General Dynamics Corp.* is particularly instructive to the Court's decision. 249 F.3d 958 (9th Cir. 2001). In that case, a potential buyer signed an exclusive agreement to negotiate with a potential seller regarding the purchase of land. *Id.* at 959. The seller breached by selling to a third-party during the exclusive period. *Id.* The would-be buyer sued, seeking lost profits from a hypothetical shopping center it had planned to build on the land. *Id.* at 960, 962. The Ninth Circuit reasoned that there was "no way to evaluate, other than through speculation, the profits that [the buyer] might have made." *Id.* at 962. The court noted that "Defendant could have upheld its end of the bargain, and the sale could still have fallen through due to some intervening event[.]" *Id.* at 960. Accordingly, the court affirmed the district court's dismissal of the case on the grounds that damages could not be proven with reasonable certainty, as required under California law. *Id.* at 959.

Likewise, damages cannot be shown in this case with reasonable certainty. As in *Vestar*, any damages that Corbett might have suffered are far too speculative and contingent on future decisions of not only the parties themselves, but of presently unidentified third parties.

The plaintiff in *Vestar* was unable to demonstrate with reasonable certainty that it would succeed in reaching an acceptable deal with the seller, and that it would then be able to develop a shopping mall on the land, never mind what

profits it might have made if it had been able to do so. Here too, Corbett will be unable to demonstrate that, absent Bison Boys' alleged breach, he would have been able to successfully find a third party willing to produce the reality show and negotiate a deal with them that Bison Boys would find acceptable. Moreover, neither the Complaint or the agreement signed by Corbett and Bison Boys provides any indication of what the terms of the hypothetical third-party agreement might have been, nor what Corbett's commission might have been on the deal.

      The Court finds that Corbett lacks standing because his injury is too speculative to demonstrate injury-in-fact. The Court will therefore dismiss Plaintiff's Complaint without prejudice, giving him leave to amend. *See, e.g.*, *Coakley v. Sunn*, 895 F.2d 604, 608 (9th Cir. 1990) (instructing that dismissal for lack of standing should be without prejudice).

      Because Corbett does not have standing against any of the defendants in this case, the Court does not address Defendants' separate argument that Corbett failed to state a claim against Tyler Porter as an individual under Federal Rule of Civil Procedure 12(b)(6).

## ORDER

**IT IS ORDERED** that Defendants' Motion to Dismiss (Dkt. 3) is **GRANTED**, and Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**. Should Plaintiff wish to file an amended complaint, it must be filed with the Court **within 30 days** after the date of this Order.

DATED: October 13, 2020

B. Lynn Winmill
U.S. District Court Judge