UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID CORBETT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BISON BOYS, LLC, an Idaho limited liability company; TYLER PORTER, an individual,<br><br>　　　　Defendants. | Case No. 4:20-cv-00353-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendants Bison Boys, LLC and Tyler Porter's Motion to Dismiss Amended Complaint. Dkt. 16. For the reasons that follow, the Court will deny the motion.

## BACKGROUND

The factual and procedural background of this case is more fully set out in the Court's order granting Defendants' first motion to dismiss. Dkt. 11. Briefly, David Corbett alleges that Bison Boys, LLC breached a contract that the parties entered into in April 2019 for Corbett to develop and promote a reality television series about the Bison Boys.

MEMORANDUM DECISION AND ORDER - 1

The Court dismissed Corbett's first complaint without prejudice, finding that Corbett's injury as alleged was too speculative and that he lacked standing to bring the case. Dkt. 11. Corbett filed an amended complaint alleging breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, unjust enrichment, and quantum meruit. *First Amend. Compl.*, Dkt. 14 at ¶¶ 40-68. Corbett is also suing Tyler Porter as an individual for tortious interference with contract. *Id.* at ¶¶ 69-74. Bison Boys filed a motion to dismiss the amended complaint on substantially the same grounds as the dismissal of the first complaint—lack of Article III injury and Porter being a party to the contract through his relationship with the company. Dkt. 16.

## LEGAL STANDARD

### A.   12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may bring a motion to dismiss for lack of subject matter jurisdiction. In a motion challenging subject matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of showing there is jurisdiction to survive defendant's motion to dismiss. *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001). Where a FRCP 12(b) motion to dismiss is based on lack of standing, the reviewing court must defer to the plaintiff's factual allegations, and further must "presume that

general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

**B.     12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept as true, legal conclusions that are couched as factual allegations. *Id.* Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## ANALYSIS

### A.   Corbett has sufficiently alleged standing.

Standing is a jurisdictional question that is properly raised in a Rule 12(b)(1) motion to dismiss. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). The standing inquiry "addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication." *Id.* "First and foremost," the plaintiff must sufficiently allege an "injury in fact," that is, a "harm suffered by the plaintiff that is 'concrete' and 'actual and imminent, not "conjectural" or "hypothetical."'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (quoting *Whitmore v. Ark.*, 495 U.S. 149, 155 (1998)).

Construing the facts in a light most favorable to Corbett, as the Court is required to do, Corbett has sufficiently pled injury in fact. Corbett was plausibly injured by the loss of the one-year exclusive right to "represent all television, motion picture rights and ancillary and allied rights in and to the Property to Third Parties." *Ex. 1*, Dkt. 14 at 20; *see First Amend. Compl.*, Dkt. 14 at ¶¶ 17-18. First, the complaint alleges facts sufficient for the Court to find that this exclusive right had independent value.[1] *See First Amend. Compl.*, Dkt. 14 at ¶ 18 ("In the entertainment industry, such a right is contracted for, exchanged, sold, and otherwise valued and treated like other property."); *id.* at ¶ 33 ("Bison Boys offered to pay Corbett an amount to 'buy him out' of the Contract because Corbett had rendered valuable services and because he still had the Exclusive Right. Bison Boys recognized the economic value of Corbett's services and the Exclusive Right.").

Moreover, the contract provided separate consideration for the exclusive right: In exchange for Corbett's efforts to shop the show, he would get an exclusive right to represent all rights in the show, including negotiating a third-party contract which would ultimately compensate him. Corbett has pled facts sufficient to show

---

[1] *See generally* Michael R. Cohen, 25B West's Legal Forms, *Intellectual Property* § 24:5 (2020) (discussing producer "shopping agreements" like the one at issue here).

that he was plausibly injured by the loss of the opportunity to negotiate a third-party contract.[2] *See First Amend. Compl.*, Dkt. 14 at ¶ 19 (laying out the industry standard compensation to the producer in agreements such as the one contemplated here).

For these reasons, the Court concludes that Corbett has properly alleged standing in this case.

### B. Corbett has stated plausible claims against the Bison Boys.

Corbett also has alleged sufficient facts to survive a motion to dismiss under 12(b)(6).[3] In addition to the claims for damages discussed above, Corbett has

---

[2] Defendants argue that because Corbett admitted that obtaining the Bison Boys' desired third-party contract was an "unlikely outcome," his damages were entirely speculative. *Def. Brief*, Dkt. 16-1 at 6; *First Amend. Compl.*, Dkt. 14 at ¶ 28. However, the Court notes that the agreement required that the parties "act in good faith and in accordance with customary entertainment industry practice and not in a manner so as to intentionally frustrate the purpose and intent of this Agreement." *Ex. 1*, Dkt. 14 at 21. Construing the facts in favor of Corbett, it is plausible that Bison Boys' insistence that they retain complete control over the show was not in accordance with customary industry practices, and itself constituted a breach of the agreement. Thus, Corbett's claims do not fail for lack of standing based off of his admission that achieving such a contract was an "unlikely outcome."

[3] Defendants assert that Corbett has failed to state a claim upon which relief can be granted because his damages are impermissibly speculative. In doing so, they challenge each of Corbett's claims for relief, because each requires a determination that Defendants' actions caused harm to Corbett. *See Seaman v. Empire Airlines, Inc.*, 2017 WL 1731686, at *4 (D. Idaho May 3, 2017) (describing the elements of breach of contract under Idaho law as: "(1) the existence of the contract, (2) the breach of the contract, (3) the breach caused damages, and (4) the amount of those damages"); *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 287-88 (1991) (noting that the covenant of good faith and fair dealing is implied in all (Continued)

plausibly stated a claim for reliance damages. Under Idaho law, "an award of reliance damages 'returns the plaintiff to its precontractual position by putting a dollar value on the detriment the plaintiff incurred in reliance on the now-broken promise.'" *SilverWing at Sandpoint, LLC v. Bonner County*, 164 Idaho 786, 797 (2019) (quoting 24 Williston on Contracts § 64:4 (4th ed. 2018)). The Idaho Supreme Court has clarified that "when an expense was both incurred in reliance on the contract and was a cost of performance, it cannot be double counted in an award of reliance and expectation damages." *Burns Concrete, Inc. v. Teton County*, 2020 WL 6387865, at *11 (Idaho 2020).

The Court in *Burns Concrete* followed the Restatement (Second) of Contracts in noting that reliance damages must be reduced by any loss that the defendant can prove with reasonable certainty that the plaintiff would have

---

contracts and that breach "results in contract damages") (quoting *Metcalf v. Intermountain Gas Co.*, 116 Idaho 622, 627 (1989)); *Profits Plus Capital Management, LLC v. Podesta*, 156 Idaho 873, 891 (2014) ("The elements required to support [a claim of promissory estoppel] are: '(1) one party's reliance on a promise creates a substantial economic detriment, (2) the reliance was or should have been foreseeable, and (3) the reliance was reasonable and justified.'") (quoting *Grover v. Wadsworth*, 147 Idaho 60, 64 (2009)); *Lincoln Land Co. v. LP Broadband, Inc.*, 163 Idaho 105, 109 (2017) ("To establish a claim for unjust enrichment, a plaintiff must prove: '(1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof.'") (quoting *Stevenson v. Windermere Real Estate/Capital Grp., Inc.*, 152 Idaho 824, 827 (2012)); *Barry v. Pac. West Constr. Inc.*, 140 Idaho 827, 834 (2004) (noting that "[r]ecovery under a quantum meruit theory is measured by 'the reasonable value of the services rendered or goods received.'" (quoting *Erickson v. Flynn*, 138 Idaho 430, 434-35 (2002)).

suffered if the contract had been performed. *Id.* (quoting Restatement (Second) of Contracts § 349 (1981)). The Restatement further provides that an injured plaintiff "may, if he chooses, ignores the element of profit and recover as damages his expenditures in reliance." Restatement (Second) of Contracts § 349 cmt. a (2020). The injured party may also elect to recover reliance damages in a contract under which he would have had a loss rather than a profit, but in that case, "it is open to the party in breach to prove the amount of the loss, to the extent that he can do so with reasonable certainty . . ., and have it subtracted from the injured party's damages." *Id.*

      Construing the facts favorably to Corbett, it is plausible that he has suffered recoverable reliance damages. Corbett alleges that he spent time and money promoting the show in furtherance of his obligations under the exclusive right portion of the contract. *First Amend. Compl.*, Dkt 14 at ¶ 36. He also alleges that in reliance on the contract, he turned down other lucrative business opportunities. *Id.* at ¶ 37. Damages for these injuries are potentially recoverable. *See* Restatement (Second) of Contracts § 344 cmt. a (2020) ("The promisee may have changed his position in reliance on the contract by, for example, incurring expenses in preparing to perform, in performing, or in foregoing opportunities to make other contracts. In that case, the court may recognize a claim based on his reliance rather

than on his expectation.").

To the extent that Bison Boys allege that Corbett would have suffered a loss under the contract entitling them to an offset, that is not an appropriate determination on a motion to dismiss, where the Court is required to construe all facts in favor of Corbett.

Because Corbett has stated plausible claims for relief, the Court will deny Bison Boys' motion to dismiss.

### C. Corbett has stated a plausible claim against Tyler Porter.

Finally, Corbett has sufficiently pled a claim against Tyler Porter. "It is well established law in Idaho that a party cannot tortiously interfere with its own contract." *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 243 (2005) (citing *Ostrander v. Farm Bureau Mut. Ins. Co.*, 123 Idaho 650, 654 (1993)). Where a defendant's actions fall within the scope of their authority as an agent to the contracting party, there is no third party to the contract and the defendant cannot be liable for tortious interference with the contract. *BECO Constr. Co. v. J-U-B Eng'rs, Inc.*, 145 Idaho 719, 724 (2008).

"A member is not an agent of a limited liability company solely by reason of being a member." Idaho Code § 30-25-301(a) (2021). Rather, the determination of whether an agency relationship exists is a question of fact, with the burden on the

MEMORANDUM DECISION AND ORDER - 9

party asserting agency. *Nelson v. Kaufman*, 458 P.3d 139, 145 (Idaho 2020); *Melichar v. State Farm Fire & Cas. Co.*, 143 Idaho 716, 723 (2007). The Court may decide as a matter of law, however, whether a given set of facts are sufficient to constitute an agency relationship. *Id.*

Here, Corbett has plausibly stated a claim for tortious interference with contract against Tyler Porter. Corbett alleges that Porter was acting outside of the scope of any agency relationship with the Bison Boys by making "misrepresentations to the members of Bison Boys regarding Corbett for the wrongful purpose of inducing Bison Boys to breach its obligations to Corbett" and "for the wrongful purpose of diverting the business opportunity to himself or a company controlled by him." *First Amend. Compl.*, Dkt. 14 at ¶ 38. Taking these allegations as true, it is plausible that Porter was not acting within the scope of any agency relationship he had with Bison Boys during the relevant time. *Cf. In re Jaques*, 615 B.R. 608, 628 (Bankr. D. Idaho 2020) (noting that an LLC member's actions are "undertaken outside the normal performance of his or her duties" and are thus out of the scope of the limited liability protection when "the member is not acting within the bounds of her duties or obligations as a member of the company, but in his or her own self-interest").

For these reasons, Defendants' motion to dismiss will be denied.

# ORDER

**IT IS HEREBY ORDERED that** Defendants' Motion to Dismiss (Dkt. 16) is **DENIED.**

DATED: March 1, 2021

B. Lynn Winmill
U.S. District Court Judge